**UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JOHN TERRY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **Case No.:** |
| ) | |
| PORTFOLIO RECOVERY ASSOCIATES, ) | **COMPLAINT AND DEMAND FOR** |
| LLC, ) | **JURY TRIAL** |
| ) | |
| Defendant ) | **(Unlawful Debt Collection Practices)** |

## **COMPLAINT**

JOHN TERRY ("Plaintiffs"), by his attorneys, KIMMEL & SILVERMAN, P.C., allege the following against PORTFOLIO RECOVERY ASSOCIATES, LLC ("Defendant"):

### **INTRODUCTION**

1. Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### **JURISDICTION AND VENUE**

2. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court

without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3. Defendant conducts business in the State of Ohio and therefore, personal jurisdiction is established.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

5. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6. Plaintiff is a natural persons residing in Westlake, Ohio, 44145.

7. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8. Defendant is a national debt collection company with corporate headquarters located at 140 Corporate Blvd., Norfolk, Virginia, 23502.

9. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11. At all relevant times, Defendant, its agents, employees, and servants, engaged in debt collection activities seeking payment from Plaintiffs for an alleged consumer debt.

12. Based on information and belief, Defendant was seeking to collect a debt owed to PNC Bank, formerly National City Bank.

13. The alleged debt at issue arose out of transactions, which were primarily for

personal, family, or household purposes.

14. Beginning in or around January 2011 and continuing until June 2011, Defendant, its agents, employees, and servants, engaged in debt collection activities seeking payment from Plaintiff.

15. Defendant, its employees and servants harassed Plaintiff by making continuous calls to his cellular phone number.

16. Plaintiff received phone calls and voice messages from Defendant on a number of occasions from the following phone numbers (678) 265-1568, (518) 207-3600, (702) 410-7069, (858) 346-1184, and (859) 918-0780; the undersigned has confirmed that the numbers belong to Defendant.

17. Defendant placed repeated calls to Plaintiff's cellular phone almost every day, causing Plaintiff to receive, at times, more than two (2) collection calls a day and at times, more than four (4) collection calls a day.

18. Defendant placed repeated calls to Plaintiff's cellular phone almost every day, causing Plaintiff to receive, at times, more than ten (10) collection calls a week and at times, more than twenty (20) collection calls a month.

19. Defendant refused to provide any company identification to Plaintiff during its initial telephone communication with Plaintiff.

20. Defendant would only state that Plaintiff owed an alleged debt of $600.00.

21. Plaintiff requested that Defendant provide him via facsimile with information concerning the alleged debt, Defendant refused.

22. Defendant reluctantly agreed to send proof of the alleged debt to Plaintiff's employers address and sent a single sheet of paper merely stating its name and the amount of

$600.00 owed to Plaintiff as verification of the alleged debt.

23. Plaintiff contacted National City Bank to try and verify the alleged debt.

24. Plaintiff was told by a representative of National City Bank that there were no records in its database associated with Plaintiff.

25. Plaintiff has repeatedly told Defendant and its representatives that he does not owe the alleged debt.

26. Plaintiff has repeatedly told Defendant and its representatives to cease calling him

27. Despite Plaintiff's verbal demands, Defendant and its representatives continue to telephone him seeking to collect on the alleged debt.

28. Plaintiff has sent two letters to Defendant requesting information on the alleged debt, the most recent letter being June 14, 2011. See Exhibit A, Plaintiff's verification request letter.

29. Defendant has failed to provide Plaintiff with additional information regarding this alleged debt.

30. During one telephone conversation with a representative of Defendant, Plaintiff again stated that he did not owe any debts and that he was not going to pay any debts.

31. Defendant's representative response to Plaintiff was: "that's a loser thing to do."

32. Defendant's representative went on to inform Plaintiff: "provide me with a credit card number over the telephone and we [Defendant] will leave you alone."

33. During another series of telephone conversation with a representative of Defendant, Plaintiff was told that Defendant can sue him and place a lien on his property.

34. When Plaintiff responded that he did not own any property, Defendant's

representative stated that Defendant could garnish Plaintiff's wages and place a lien on his vehicle.

35. Based upon information and belief, Defendant could not take such action.

36. To date, despite threats to the contrary, Defendant has not filed a lawsuit or taken other legal action against Plaintiff, thereby indicating it did not intend to take the action previously threatened.

37. Further, when contacting Plaintiff on his cellular telephone, upon information and belief, Defendant used an automated telephone dialing system or pre-recorded or artificial voice.

38. Plaintiff did not expressly consent to Defendant's placement of telephone calls to his cellular telephone by the use of an automatic telephone dialing system or pre-recorded or artificial voice prior to Defendant's placement of the calls.

39. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes," as specified in 47 U.S.C. §227(b)(1)(A).

40. Within five (5) days after the initial communication with Plaintiff in January 2011, Defendant failed to send written correspondence to Plaintiff notifying him of his rights and privileges under the law, specifically the right to dispute and/or request verification of the alleged debt.

41. Defendant's actions in attempting to collect the alleged debt were harassing, abusive and highly deceptive.

PLAINTIFF'S COMPLAINT

# CONSTRUCTION OF APPLICABLE LAW

## THE FAIR DEBT COLLECTION PRACTICES ACT

42.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

43.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action.  The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

44. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692b.

45. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

46. The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).

47. The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002).

48. The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985); Graziano v. Harrison, 950 F. 2d 107 (3rd Cir. 1991); Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222 (9th Cir. 1988). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Id. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. Clomon, 988 F. 2d at 1318.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

49. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

50. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

51. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly

and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

52. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."

**COUNT I
DEFENDANT VIOLATED
THE FAIR DEBT COLLECTION PRACTICES ACT**

53. In its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways:

　　a. Defendant violated of the FDCPA generally;

　　b. Defendant violated § 1692d of the FDCPA by harassing Plaintiff in connection with the collection of an alleged debt;

　　c. Defendant violated § 1692d(5) of the FDCPA, when it caused the Plaintiff's telephone to ring repeatedly or continuously with the intent to harass, annoy or abuse Plaintiff;

　　d. Defendant violated § 1692e of the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt;

　　e. Defendant violated § 1692e(5) of the FDCPA by threatening to take action

that it could not or did not intend to take;

    f. Defendant violated § 1692e(10) of the FDCPA by using false representations or deceptive means to collect or attempt to collect a debt;

    g. Defendant violated § 1692f of the FDCPA by using unfair and unconscionable means with Plaintiffs to collect or attempt to collect a debt;

    h. Defendant violated § 1692g of the FDCPA by failing to send written notification, within five (5) days after its initial communication with Plaintiff, advising Plaintiff of her rights to dispute the debt or request verification of the debt; and

    i. Defendant acted in an otherwise deceptive, unfair and unconscionable manner and failed to comply with the FDCPA.

## COUNT II
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

54. Plaintiff hereby incorporates all facts and allegations specified in all preceding paragraphs, by reference as if fully set forth at length.

55. The Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227 *et seq.*, prohibits the use of an automated or pre-recorded voice to a consumer on any number assigned to a cellular phone. See 47 U.S.C. § 227(b)(1)(A)(iii).

56. A person may bring a private cause of action "based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation" under § 227(b)(3)(A) of the TCPA.

57. A person is entitled to bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater" under § 227(c)(5)(B) of the TCPA.

58. The Court, in its discretion, is authorized to award up to three (3) times the actual damages sustained for Defendant's violations by § 227(c)(5) of the TCPA.

59. Defendant repeatedly and regularly placed automated calls to Plaintiff's cellular telephone, leaving several pre-recorded or automated messages.

60. Defendant's conduct violated § 227(b)(1)(A)(iii) of the TCPA by making any call using any automatic telephone dialing system or an artificial prerecorded voice to a telephone number assigned to a cellular telephone service.

WHEREFORE, Plaintiff, JOHN TERRY, respectfully prays for a judgment as follows:

   a. All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

   b. Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   c. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3);

   d. Statutory damages of $500 for each violation of the TCPA, pursuant to 47 U.S.C. § 227(c)(5)(B); and

   e. Any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, JOHN TERRY, demand a jury trial in this case.

                                        RESPECTFULLY SUBMITTED,

DATED: 07/29/11              KIMMEL & SILVERMAN, P.C.

                                        By:/s/ Christina Gill Roseman

                                        Christina Gill Roseman
                                        Kimmel & Silverman, P.C.
                                        210 Grant Street, Suite 202
                                        Pittsburgh, PA 15219
                                        Phone: (412) 566-1001
                                        Fax: (412) 566-1005
                                        Email: croseman@lemonlaw.com